**STATE of Missouri, Respondent,**

v.

**Terry HAMPTON, Appellant.**

No. 45522.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 25, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied
March 17, 1983.

Application to Transfer Denied
April 26, 1983.

Henry Robertson, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

REINHARD, Judge.

Defendant was convicted by a jury of the offense of robbery in the first degree, a violation of § 569.020, RSMo.1978, and was

sentenced as a prior offender to serve a term of twenty years with the Department of Corrections. He appeals. We affirm.

The victim, Howard Johnson, worked at the post office in downtown St. Louis. At about 2:30 a.m. on July 9, 1981, while on his meal break, he left the post office and started walking toward a convenience store located several blocks away to purchase a soda. On his way, he noticed two men, one of whom he identified as the defendant, across the street from the post office in the park. After he made his purchase, and was returning to work, the two men he had previously seen in the park approached him. Defendant pulled a "little, small caliber pistol" out and told him to "get up against the car" or "they would blow . . . [his] brains out." Defendant took cash from the victim's front pocket and his wristwatch while the other man seized the victim's wallet and checkbook. Before they left, defendant again threatened to blow the victim's brains out if he "said anything about [the robbery]."

Johnson returned to work and told no one about the incident. The next day he changed the locks in his house and notified the bank not to honor the checks.

Detective Joe Ferrario testified that on the morning of July 18, 1981, he and several other officers went to 2221–A Angelica to execute a search warrant. They knocked on the door, and Virginia Hampton, defendant's mother, appeared. They advised her they had a search warrant for the premises and gave her a copy of the warrant. They went upstairs and found defendant sleeping in a bedroom. He woke up and they placed him under arrest. Officer Clobes testified that defendant stated, "Wonder who the m_____-f_____ was that told on me."

The officers conducted a search of the house and found a toy weapon resembling "a .38 caliber snubnose handgun." Before they left, defendant said he wanted to take a jacket with him. Detective Ferrario searched the jacket and found protruding from the pocket of the jacket the victim's checkbook and identification.

Detective Ferrario called Johnson that afternoon and informed him that they had recovered his property. The next day Johnson went to the police station and identified defendant's photograph from a group of several photographs. Approximately one-half hour later, Johnson identified the defendant in a lineup. When informed that he had been identified, defendant stated, "that's why I don't want to stand in any line-ups. I always get picked out." In addition, Johnson identified the defendant at trial.

Defendant raises four contentions of error. He alleges that the court erred in failing to submit to the jury an instruction on the lesser included offense of second degree robbery. The verdict director for first degree robbery provided that the jury had to find the defendant stole the property of Howard Johnson by threatening the immediate use of physical force and in the course of the stealing the defendant "displayed or threatened the use of what appeared to be a deadly weapon." Defendant's proffered instruction for second degree robbery is substantially identical to the first degree robbery instruction except the finding that defendant "displayed or threatened the use of what appeared to be a deadly weapon" is omitted.

Second degree robbery is a lesser included offense of robbery in the first degree. *See* Comment to § 569.030, RSMo. 1978. The trial court is required to instruct the jury on all lesser included offenses supported by the evidence, *State v. Smith*, 592 S.W.2d 165 (Mo. banc 1979); but "whether an instruction should be given on a lesser included offense depends upon whether there are facts in evidence sufficient to arguably show a lack of an essential element of the higher degree of the offense." *State v. Harris*, 598 S.W.2d 200, 203 (Mo. App.1980). Or, as Judge Gunn stated the issue for our court recently in *State v. Martin*, 624 S.W.2d 879, 883 (Mo.App.1981):

> When there is strong and substantial proof of defendant's guilt of the offense charged, however, and the evidence does not reveal a lack of an essential element

of this more serious offense, an instruction on the lesser or included offense is unnecessary.

■ Defendant argues that "[t]he jury could reasonably have concluded that Howard Johnson did not believe that he was confronted with a deadly weapon," thus negating an essential element of first degree robbery. We disagree.

Johnson testified that defendant "pulled a little small caliber pistol" out and threatened to "blow [his] brains out." When shown state's Exhibit 8, the toy pistol, Johnson said, "I don't know if that was the same one, but it was similar in size and shape." The cylinder of the toy pistol had been replaced with a metallic cylinder from a tear gas gun. In addition, the handles had been taped with black electrical tape. Officer Ferrario testified both of these alterations made the pistol look more authentic and in its altered state resembled "a .38 caliber handgun." After the robbery, Johnson changed the locks on his house and notified his bank. He testified he hadn't reported the robbery to any one "for fear that these men would follow up their threat, that they knew where ... [he] lived...."

We find these circumstances similar to those in *State v. Dickerson,* 607 S.W.2d 196 (Mo.App.1980). In *Dickerson,* defendant was convicted of first degree robbery and charged trial court error in refusing to instruct the jury on the lesser included offenses of second degree robbery and stealing. The victim testified that "defendant pointed at him what appeared to be a nickel plated, automatic pistol, of either .357 magnum or a .38 caliber, announced a hold-up and demanded his wallet." We stated:

Defendant was convicted of having forcibly stolen property by the display or threatened use of *what appeared to be* a deadly weapon or dangerous instrument. [W]hether or not the gun was, in actuality, a dangerous or deadly instrument was only important insofar as it was likely to create the victim's reasonable belief that it was capable of effecting him great bodily harm. (emphasis original).

607 S.W.2d at 197. We concluded there was "no evidence of a robbery committed by any method save first degree." 607 S.W.2d at 198.

In the circumstances here, we have concluded there was no evidence that the robbery of Howard Johnson was accomplished in any other manner than with what "appeared to be a deadly weapon." The trial court committed no error in refusing to instruct on second degree robbery.

Defendant's remaining allegations of error concern matters which he initially raised in a pre-trial motion. In that motion, defendant requested that the police officers be prohibited from referring to defendant's arrest or the search warrant because this evidence constituted proof defendant committed other crimes. In addition, defendant sought to suppress his post-arrest statement, "Wonder who the m_____-f_____ was that told on me" and his post-lineup statement, "That's why I don't want to stand in any line-ups."

The trial court ruled that the police officers could not refer to the specific crimes for which defendant was arrested, but could state they executed a search warrant and placed defendant under arrest. The state fully complied with the court's order at trial. On appeal, defendant contends that allowing the officers to refer to defendant's arrest and the search warrant was error.

The trial court was confronted with unusual circumstances. Howard Johnson's checkbook and identification, which initiated the police investigation of this offense, were recovered on the morning of July 18, while the officers were arresting defendant for other offenses. The victim testified that he first spoke with the police about this crime on the afternoon of July 18. We think it evident that despite the state's argument to the contrary, the jury necessarily concluded that defendant was placed under arrest on the morning of the 18th, for a crime other than one for which he was on trial.

■ The checkbook and identification constituted crucial, incriminating evidence

against defendant. The police discovered these items in defendant's jacket pocket after he stated he wanted to wear the jacket on the way to the police station. The state had a right to establish that the victim's checkbook was found in defendant's possession and his statement to the officers and the circumstances in which it was made were critically relevant to this issue. In light of the fact that Howard Johnson had not reported the offense to the police at this time, it would have been almost impossible to explain the circumstances in which the checkbook and identification were found without indirectly informing the jury that defendant was under arrest for other crimes.

It is axiomatic that evidence of other crimes is not admissible unless it has some legitimate tendency to directly establish defendant's guilt of the crime for which he is on trial. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954). It is also well established that when admissible evidence is inseparable from evidence which implicates defendant in another crime, our courts almost universally hold the evidence admissible in its entirety. Whether evidence is inseparable is left to the sound discretion of the trial court. *State v. Brown,* 584 S.W.2d 413, 415 (Mo.App.1979). In the circumstances of this case, we find no abuse of trial court discretion. The court did not err in allowing the police officers to testify defendant was arrested.

■ Neither did the court err in allowing the two officers to testify they were executing a search warrant. No one stated at trial the reasons for or objects of the search warrant. The officers only stated they served a copy of the warrant on defendant's mother and executed a search of the premises. There was no testimony of what they found other than those items related to this offense. This did not constitute proof that defendant committed other crimes. Moreover, even if it is considered as such, it does not necessitate reversal. The statement is vague, indefinite, and completely lacking in any specific reference to another crime. *State v. Jones,* 578 S.W.2d 286, 288 (Mo. App.1979).

■ Further, we find no prejudicial error in allowing officer Ferrario to testify that defendant stated, "That's why I don't want to stand in any line-ups. I always get picked out." Defendant acknowledges that statements made by him which tend to incriminate him or connect him with the crime are admissible when voluntarily made and any statement evincing a consciousness of guilt is an admission against interest. Defendant argues this statement is not an admission because it neither evinces consciousness of guilt nor tends to connect him with the crime. Defendant argues an innocent person would be just as displeased with being identified in a lineup. We agree that this statement does not constitute an admission against interest and was immaterial and irrelevant. But, this entitles defendant to no relief, as he has not demonstrated that he was prejudiced by the statement. *State v. Fitzgerald,* 174 S.W.2d 211, 215 (Mo.1943). A judgment will not be reversed because of the admission of immaterial or irrelevant evidence absent a showing of prejudice.

■ Finally, defendant asserts the trial court erred in allowing officer Clobes to testify defendant stated, "Wonder who the m_____-f_____ was that told on me." Defendant contends that at the time he made it, the officers were unaware of his involvement in the present offense. Defendant had been placed under arrest for unrelated offenses immediately before he made the statement. Defendant argues that this statement was not an admission of guilt to this offense, but to the offenses for which he was arrested. The state argues that defendant did not know the victim had not reported the crime so that defendant's statement encompassed not only the offenses for which he was arrested but for those he had committed. If the admission of the evidence was error, it was harmless. Error which in a close case might call for reversal, may be disregarded where the evidence of guilt, as here, was strong. *State v. Vernor,* 522 S.W.2d 312, 316 (Mo.App.1975).

Affirmed.

CRANDALL, P.J., and CRIST, J., concur.