STATE of Missouri,
Plaintiff/Respondent,

v.

Vaughn HENDERSON,
Defendant/Appellant.

Vaughn HENDERSON,
Movant/Appellant,

v.

STATE of Missouri,
Defendant/Respondent.

Nos. 57925, 60252.

Missouri Court of Appeals,
Eastern District,
Division One.

March 17, 1992.

Emily Blood, Public Defender, Kathleen Green, St. Louis, for defendant/appellant.

John Munson Morris, III, Millie Aulbur, Rudolph Rhodes, Asst. Attys. Gen., Atty. Gens. Office, Jefferson City, for plaintiff/respondent.

CRANE, Judge.

A jury found Vaughn Henderson guilty of unlawful use of a weapon by carrying a concealed weapon in violation of § 571.-030.1 RSMo 1986. The trial court found Henderson to be a prior and persistent offender and sentenced him to ten years imprisonment. Henderson filed a Rule 29.15 motion for post-conviction relief which was denied after an evidentiary hearing. Henderson appeals both the judgment of the trial court and the order of the motion court.

On his direct appeal Henderson contends that the trial court erred in overruling his motion to exclude evidence of a robbery investigation and of another weapon and Henderson's statement that he was represented by a certain attorney. He further contends the trial court erred in giving a "reasonable doubt" instruction patterned after MAI–CR3d 302.04. On appeal from the order of the motion court, Henderson asserts that he was denied his right to effective assistance of counsel in that his attorney failed to call his brother as a witness. We affirm both the judgment of the trial court and the order of the motion court.

## DIRECT APPEAL

The sufficiency of evidence to sustain Henderson's conviction is not in dispute. The evidence at trial reveals that on June 25, 1989, Detectives Craig Longworth and Ralph Campbell of the St. Louis City Police Department were conducting a robbery investigation at an address in the City of St. Louis where they came in contact with the informant in this case. The informant accompanied the detectives to the Fourth District Bureau for questioning. At approximately 2:30 p.m., as Detective Longworth and the informant were in an unmarked police car en route to an address where Henderson was said to be located, the informant pointed to a brown Ford Maverick and said, "There is Moonie's car. There they are there." "Moonie" is Henderson's nickname. Detective Longworth notified the dispatcher that he was following Henderson's car and that he would soon make a stop.

Within a minute or two, Detective Longworth's partner, Detective Campbell, joined him. The brown Maverick stopped at the mouth of an alley. The informant identified Henderson as the occupant of the front passenger seat. Detective Longworth approached the driver and ordered him to exit the car. He also ordered

Henderson and Henderson's brother, Dudley Henderson, who was seated in the rear seat, to exit the car.

Another officer who responded to the scene looked into the Maverick and found a fully loaded .38 caliber revolver wrapped in a child's tan car coat in the front seat, and a fully loaded .357 caliber magnum wrapped in a blue jean jacket in the rear seat of the automobile. After the weapons were found, Detective Longworth placed all three occupants under arrest and individually advised them of their constitutional rights. Henderson said he understood his rights and then said, "Look man. Art Margulis is my attorney. You ain't got nothing. The other gun is mine. And please don't give my brother a case." Detective Longworth testified that Henderson was referring to the .38 caliber revolver found in the front seat.

For his first point Henderson contends that the trial court erred in overruling his motion in limine to exclude evidence of the robbery investigation, the second weapon, and the statement concerning Art Margulis because this evidence constituted evidence of other crimes. At trial Henderson's counsel renewed her objection to the evidence.

A trial court's ruling on a motion in limine is interlocutory and is thus not appealable. *State v. Hart*, 805 S.W.2d 234, 237 (Mo.App.1991). A ruling on evidence will only be preserved when it is made at trial at the time the evidence is offered. *Id.* In order for the issues raised in a motion in limine to be preserved for appeal they must be raised at trial. *State v. Wolfe*, 793 S.W.2d 580, 586 (Mo.App.1990). Since defendant did renew his objection at trial, we will treat his point on appeal as challenging the ruling of the court at trial rather than on the pretrial motion.

A trial court enjoys broad discretion in ruling on whether to exclude or admit evidence adduced by the parties at trial. *State v. Urban*, 798 S.W.2d 507, 516 (Mo.App.1990). We do not interfere with a trial court's ruling on the admission or exclusion of evidence absent a clear abuse of that trial court's discretion. *Id.*

Henderson claims that the admitted evidence should have been excluded because it constituted evidence of other crimes. Evidence of separate, distinct and unrelated crimes is generally inadmissible unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). However, there are many exceptions to this principal. If the separate and distinct crimes tend to establish motive, intent, absence of mistake or accident, a common scheme or plan, identity, or the *res gestae*, evidence of the separate offenses is admissible. *State v. Whitman*, 788 S.W.2d 328, 336–37 (Mo.App.1990). Evidence of separate crimes is admissible if it is relevant to prove a defendant's guilt of the particular crime with which he is charged and not merely to show a defendant's bad character or his disposition to commit the crime. *Id.* at 337. It is also well established that when admissible evidence is inseparable from evidence which implicates defendant in another crime, the evidence is usually admissible in its entirety. Whether evidence is inseparable is left to the sound discretion of the trial court. *State v. Hampton*, 648 S.W.2d 162, 166 (Mo.App.1983). The state may paint a complete picture of the crime charged and need not sift and separate the evidence. *Whitman*, 788 S.W.2d at 337.

Whether evidence of other crimes is admissible turns on whether the evidence is relevant and that determination is made by the trial court which is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance. *Kenley*, 693 S.W.2d at 81. A trial court's admission of irrelevant and immaterial evidence, even of other crimes, will not be reversed on appeal absent a showing of prejudice. *Hampton*, 648 S.W.2d at 166.

Henderson first attacks the admission of the testimony of both Detective Longworth and Detective Campbell that they met the informant while engaged in a robbery investigation. A robbery was

mentioned in evidence solely in the context of what the police were doing when they met the informant and was not in evidence again. No details of the robbery were brought out, nor did the evidence indicate what, if any, Henderson's connection to the robbery was. The informant testified, but did not mention a robbery or a robbery investigation. There was no evidence that Henderson had ever engaged in, been arrested for or charged with a robbery.

We have held that the mention that defendant was "wanted" or the subject of an "arrest warrant" for an unrelated offense may be admissible to provide a clear and coherent narrative of the circumstances preceding the arrest. *State v. Sanders,* 761 S.W.2d 191, 192 (Mo.App.1988). In *Sanders* the defendant was tried for illegal possession of PCP. One of the police officers testified that he learned defendant was staying at a motel in the City of St. Louis. After determining that there were outstanding warrants for defendant's arrest, he and other officers went to the motel, arrested defendant and found PCP in his jacket pocket. No specific details concerning the arrest warrants, such as the nature of the charges or the jurisdiction from which they were issued, were disclosed. We found that the vague mention of outstanding warrants was not prejudicial since the number of warrants, the nature and severity of the offense, or the close connection between the charged and uncharged offense was not disclosed. We further held the testimony in *Sanders* not only explained the legality of defendant's arrest but helped explain why two detectives had entered his home uninvited and were taking him away in handcuffs. *Id.* at 193.

In *Sanders,* we relied on *State v. West,* 743 S.W.2d 592 (Mo.App.1988), *State v. Churchir,* 658 S.W.2d 35 (Mo.App.1983), *Hampton,* 648 S.W.2d at 166, and *State v. Jones,* 578 S.W.2d 286 (Mo.App.1979) for the rules that evidence of a defendant's arrest on other charges or the existence of outstanding warrants may be admissible to provide a clear and coherent narrative of the circumstances preceding the arrest and that vague references to uncharged offenses are not sufficiently prejudicial to warrant a reversal.

In *West,* we held that the defendant was not prejudiced in a prosecution for carrying a concealed weapon by the testimony of the arresting officer that prior to arresting defendant for carrying a concealed weapon, and while she was en route to the scene of a shooting, she had learned defendant was wanted for assault. Such testimony was "related to a chain of events occurring minutes prior to the arrest, provided an explanation for [the officer's] arrival on the scene and her actions upon arrival. As such, the testimony was so closely intertwined with the crime in question as to be virtually an integral part of it." 743 S.W.2d at 593.

In *Churchir* the defendant was on trial for murder. The evidence which was used to prove he committed murder was discovered when defendant had been arrested for a burglary. The trial court allowed into evidence testimony about the arrest for burglary, but did not allow evidence of any details of the burglary. We held evidence that the defendant was arrested on an unrelated charge of burglary was not erroneous since it explained why the police investigated the defendant.

In *Hampton* defendant was convicted of robbery in the first degree. In connection with other unrelated offenses, which were not identified at trial, police searched defendant's home and arrested him. Before they left defendant said he wanted his jacket. In the jacket police found the robbery victim's stolen checkbook and identification. During the trial the officers testified they executed a warrant but did not state the reasons for the warrant. We held the "state had a right to establish that the victim's checkbook was found in defendant's possession and.... it would have been almost impossible to explain the circumstances in which the checkbook and identification were found without indirectly informing the jury that defendant was under arrest for other crimes." 648 S.W.2d at 166.

In *Jones* the defendant was tried for forcible rape, robbery first degree and armed criminal action. On appeal he claimed the court erred by denying a mistrial when a policeman testified that they were looking for the defendant "because he had already been wanted." We noted that "[e]ven if the 'wanted' statement is considered as evidence of another crime, it does not necessitate a reversal. The testimony was vague, indefinite, and lacking in any specific reference to another offense." 578 S.W.2d at 288.

From these cases it is clear that under some circumstances testimony that a defendant was wanted for or arrested for a separate unrelated offense may be admissible to give a coherent picture of the circumstances leading police to investigate defendant or uncover evidence of the offense for which he is on trial, where the effect of such testimony is not prejudicial. Lack of prejudice is established where either the separate offense is not identified, as in *Sanders, Hampton* and *Jones,* or the offense is identified, but no details are given, as in *West* and *Churchir.*

*State v. Tillman,* 454 S.W.2d 923 (Mo. 1970) does not compel a different result. In *Tillman* the court held that under the circumstances of that case uncharged conduct could not be admitted solely to support the legality of the arrest, where legality of the arrest was not an issue at trial. In *Tillman,* the occupants of an Oldsmobile were arrested for murder and robbery. After the arrest, troopers searched the car and found a loaded revolver and an automatic pistol. During the trial on the charge of carrying a concealed weapon, the prosecutor in his opening statement and a trooper in his testimony stated that the occupants of the car were arrested for murder and robbery. The court reversed, rejecting the state's sole justification for admission "that the jury were entitled to know the circumstances of the arrest because the admissibility of the pistols seized depended upon the legality of the arrest" because the question of the legality of the arrest was not an issue at trial. *Id.* at 926.

*Sanders* distinguished *Tillman* because it referred to specific offenses and because no justification for explaining the circumstances of the arrest was shown. In *Sanders* we held:

The vague mention of outstanding warrants is less prejudicial since the number of warrants, the nature and severity of the offense, or the close connection between the charged and uncharged offense remains undisclosed. Furthermore, the testimony in appellant's case not only explained the legality of his arrest but helped explain why two detectives had entered his home uninvited and were taking him away in handcuffs.

761 S.W.2d at 193.

The present case is also distinguishable from *Tillman.* In *Tillman* the evidence was that defendant had been arrested for the crimes of robbery and murder. The fact of the arrest constituted evidence that defendant had committed those crimes. In this case there was evidence that the officers had been investigating a robbery, but there were no details in evidence that defendant had been involved in a robbery, was wanted for, had committed, was arrested for or had ever been charged with a robbery. Absent any such evidence connecting defendant with the separate uncharged offense of robbery, we cannot say that the evidence that the police officers met the informant while on the scene of a robbery investigation prejudiced Henderson. To the extent that any connection could be made between the robbery and Henderson, it explained why the police stopped Henderson and looked in his car. In these circumstances the trial court's admission of the police officers' testimony that they met the informant on the scene of a robbery investigation was not prejudicial error.

Henderson next argues that the trial court erred in admitting the .357 caliber magnum, which was found at the same time in the car as the .38 caliber revolver, because he was only charged with unlawful use of the .38 caliber handgun. Here the .357 caliber magnum was properly admitted as part of the *res gestae* to explain

Henderson's statement at the time of his arrest, "The other gun is mine. And please don't give my brother a case." The fact that two guns were found was necessary to give context and meaning to the statement which proved the elements of unlawful use of a firearm; that defendant carried a firearm upon or about his person and that he knowingly carried it so that it was concealed from ordinary observation. It is the burden of the prosecution to prove to the satisfaction of the jury every element of the crime beyond a reasonable doubt. The state has a right to have relevant and material evidence received and should not be unduly limited in satisfying its burden of proof. *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983). The trial court did not abuse its discretion in allowing the .357 caliber magnum into evidence.

■ Henderson next challenges the admission into evidence of a portion of his statement after arrest, "Look man. Art Margulis is my attorney. You ain't got nothing." He claims this statement is evidence of other crimes because Art Margulis is a well-known criminal defense attorney in the St. Louis area. Even if Mr. Margulis's reputation was known to the jurors, the admission of this statement does not require reversal. First, the statement evidences a consciousness of guilt in that it is an attempt to intimidate the officers with the reputation of his attorney. Secondly, the statement is vague, indefinite and completely lacking in any specific reference to another crime. *Hampton*, 648 S.W.2d at 166. The trial court did not err in admitting this portion of Henderson's post-arrest statement.

■ For his remaining point on direct appeal, Henderson argues that the trial court committed plain error in giving MAI–CR3d 302.04 on reasonable doubt. He claims that this instruction creates a lesser and misleading burden of proof. This point has been thoroughly and repeatedly addressed and rejected by the Missouri Supreme Court. *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). This court is constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. *State v. Weems*, 800 S.W.2d 54, 58 (Mo.App.1990); Missouri Constitution Article V, section 2. Henderson argues that the recent decision of the United States Supreme Court in *Cage v. Louisiana*, —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) invalidates MAI–CR3d 302.04's definition of proof beyond a reasonable doubt. Our supreme court has addressed the issue of whether *Cage* applies to MAI–CR3d 302.04 and has explicitly held that MAI–CR3d 302.04 meets the constitutional requirements for a definition of reasonable doubt and is unlike the charge in *Cage*, which equated proof beyond a reasonable doubt with a lower standard. *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991). This point is denied.

## POST–CONVICTION APPEAL

For his appeal from the motion court's denial of relief under Rule 29.15, Henderson asserts he was denied effective assistance of counsel at trial because his attorney failed to call his brother, Dudley Henderson.[1] He claims Dudley could have testified that the guns were in the trunk of the car and that Henderson did not make the statement about having an attorney.

■ Our review of an order denying post-conviction relief is limited to determining if the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Childers*, 801 S.W.2d 442, 446 (Mo.App.1990). The order is clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Jones v. State*, 773 S.W.2d 156, 157–158 (Mo.App.1989); *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986).

■ To prevail on a claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v.*

---

1. For clarity, Dudley Henderson will be hereinafter referred to by his first name.

*Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* In determining whether counsel's performance was deficient, the inquiry must be whether, in light of all the circumstances, counsel's assistance was reasonable. *Jones,* 773 S.W.2d at 158. In order to show prejudice, a movant must show there was a reasonable probability that, but for errors by movant's attorney, the jury would have had a reasonable doubt respecting movant's guilt. *Childers,* 801 S.W.2d at 447.

▆▆▆▆ To demonstrate ineffectiveness in failing to call a witness to testify, a movant must establish that the attorney's failure to call the witness was something other than reasonable trial strategy. *Terry v. State,* 770 S.W.2d 723, 724 (Mo.App. 1989). In addition, a movant must establish that the witness could have been located through reasonable investigation, that he would have testified if called and that his testimony would have provided a viable defense. *Childress–Bey v. State,* 779 S.W.2d 697, 699 (Mo.App.1989). The choice of witnesses and defense tactics are ordinarily matters of trial strategy and will not support a claim of ineffective assistance of counsel. *Hannah v. State,* 816 S.W.2d 1, 4 (Mo.App.1991). A decision not to call a witness is virtually unchallengeable. *Childress v. State,* 778 S.W.2d 3, 6 (Mo.App. 1989).

▆▆▆▆ Two witnesses testified at the evidentiary hearing on this motion; Henderson testified on his own behalf, and his trial counsel testified on behalf of the state. Henderson testified that he wanted his brother Dudley to testify because they were arrested together and Dudley could testify that Henderson did not state to the police that one of the guns was his and did not tell the police not to give his brother a case.[2] His defense attorney, an assistant public defender, testified that she inter-

viewed Dudley and she called him to testify at the hearing on the motion to suppress. Based on her interview with him and his suppression hearing testimony, she decided not to call him at trial. In the first place, Dudley's version of the seizure contradicted the testimony of three police officers. Dudley maintained that the police seized all the weapons from the trunk of the car and accessed the trunk by removing the back seat. Defense counsel felt that, given this contradiction, Dudley's demeanor, and the fact that he was the defendant's brother, the jury would not believe him. Moreover, she could not corroborate whether the back seat of the automobile had been removed because the automobile had been destroyed. In addition, defense counsel felt Dudley's testimony would further incriminate Henderson. Dudley testified at the pretrial hearing that the weapon in issue had been wrapped in Henderson's coat and that Henderson owned the car. Further, defense counsel felt that she could imply to the jury that the weapon was Dudley's and not Henderson's if Dudley did not take the stand.

The motion court found the decision not to call the witness was a matter of trial strategy and not a basis for finding ineffective assistance of counsel and denied the motion. The findings of the trial court are not clearly erroneous. This point is denied.

The judgment of the trial court and the order of the motion court are affirmed.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.

---

**2.** There was no testimony at the hearing about Dudley's testimony concerning Henderson's

statement about Mr. Margulis.